CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
8/30/18
JULIA C. DUDLEY, CLERK
BY: s/ K. DOTSON
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JAMES B. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 5:17-cv-00012 |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff James B. Johnson, proceeding *pro se*, brings this action seeking medical costs and compensatory damages for defendants' alleged negligence. On March 15, 2018, the court entered a memorandum opinion and order addressing defendant Hope Village, Inc's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and the United States' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The complaint contained a slip-and-fall negligence claim, and the court liberally construed the complaint to include a second negligence claim for delay in receiving medical care. Because neither defendant had addressed the liberally-construed claim, the court treated both defendants' motions as partial motions to dismiss and granted both partial motions as to the slip-and-fall claim. Additionally, because it concluded that the United States alone, and not the Federal Bureau of Prisons (BOP), may be properly named in this Federal Tort Claims Act (FTCA) action, the court substituted the United States as the sole defendant for those alleged acts or omissions of BOP.

The court allowed Johnson to amend the complaint with regard to his slip-and-fall claim against Hope Village, which he has done. (Am. Compl., Dkt. No. 43.) The United States has responded to the liberally-construed negligence claim by filing a motion to dismiss the amended

complaint under Federal Rule of Civil Procedure 12(b)(1), and Hope Village has also filed a motion to dismiss under Rule (12)(b)(1), Rule 12(b)(6) or, in the alternative, for summary judgment. The motions have been fully briefed. For the following reasons, the court will grant both motions.

## I. INTRODUCTION

The court incorporates the factual background set out in its March 15 memorandum opinion. (Mem. Op. 2–3, Dkt. No. 41.) The court notes, however, that the amended complaint omits Johnson's allegation in the original complaint that his slip and fall "resulted from negligence by the Defendants to ensure against slippery and hazardous conditions." (Compl. 2, Dkt. No. 3.)

The amended complaint includes an affidavit from Johnson. In it, he states that, "[b]efore electing for an optional transfer to Hope Village," Johnson researched Hope Village and read a review that indicated it was "grossly incompetent, systemically deficient and deliberately indifferent." (Johnson Aff. 6, Dkt. No. 43.) Nevertheless, Johnson transferred to Hope Village, where he slipped on wet steps. At his first appointment with Dr. Amy Morgan at Unity Healthcare, Dr. Morgan "congratulated" Johnson for securing the appointment because "Hope Village was poorly managed." (Am. Compl. 1, Dkt. No. 43.) Johnson attended medical appointments at Unity Healthcare on at least three different days in February 2016, and he received an x-ray at Providence Hospital in early March. Dr. Morgan also ordered an MRI, and she explained that surgery would have to be scheduled, if at all, before he was released from Hope Village. (*Id.* at 1–2.)

Dr. Morgan gave Johnson the name and number of "Nurse Heggs, who would coordinate the MRI." (*Id.* at 2.) After weeks without an MRI appointment, Johnson spoke with Heggs, who

stated that Hope Village had not yet processed the request. Because Johnson was due to be released from Hope Village on May 3, 2016, Heggs said she would call Hope Village to make sure the request was processed. The MRI was scheduled for April 29, but Unity Medical Center (UMC), the MRI provider, postponed the MRI until May 3 due to "a mechanical issue." (*Id.*) Additional facts are discussed in context.

## II. DISCUSSION

### A. Standard of Review Under Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) tests the court's subject-matter jurisdiction over a plaintiff's claim. The plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In deciding a Rule 12(b)(1) motion, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). It must, however, "view[ ] the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R.*, 945 F.2d at 768).

### B. The United States' Motion to Dismiss

The United States moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) because it argues that the independent contractor exception to the FTCA bars Johnson's claim for negligent delay in providing medical treatment.

1. **The court lacks subject-matter jurisdiction over Johnson's claim against the United States for negligent delay in medical care.**

The plain language of the FTCA precludes imputing liability for actions of independent contractors. 28 U.S.C. §§ 1346(b)(1), 2671; *Logue v. United States*, 412 U.S. 521, 525–27 (1973). Whether a person is a contractor or a federal employee for purposes of the independent contractor exception is determined under federal law. *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996) (citing *Logue*, 412 U.S. at 528). When interpreting the FTCA, the Fourth Circuit has made clear that the United States will not be liable for negligent acts of independent contractors unless the United States supervised the "day-to-day operations" of the contractors. *Williams v. United States*, 50 F.3d 299, 306 (4th Cir. 1995) (internal citations omitted). "Stated differently, a court must consider whether the government exercises day-to-day control over the performance of the work under the contract." *Berkman v. United States*, 957 F.2d 108, 112 (4th Cir. 1992). Establishing standards, supplying financial support, providing advice and oversight, and inspecting and approving final work—all in order to ensure that federal funds are not used on unauthorized expenditures—does not give the federal government the "day-to-day control" necessary for the United States to be held liable for the contractors' actions. *See United States v. Orleans*, 425 U.S. 807, 818 (1976). The plaintiff bears the burden of showing a waiver of sovereign immunity and that none of the FTCA exceptions apply. *See Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

Just as with Johnson's slip-and-fall claim, the court concludes that the independent contractor exception applies to immunize the United States from any alleged liability as to Johnson's claim for negligent delay in medical care. No allegation or evidence indicates that the United States exercised day-to-day control over Hope Village employees. Johnson concedes that "Hope Village is an independent contractor" and that "Hope Village is responsible for the day to

day operations of its facility and its own employees; the United States is not." (Pl.'s Opp'n 3, Dkt. No. 49.) The independent contractor exception applies to Johnson's claim against the United States for negligence as to his delay in medical care. *See Phillips v. Fed. Bureau of Prisons*, 271 F. Supp. 2d 97, 101 (D.D.C. 2003) (dismissing FTCA claim because of independent contractor exception and noting that BOP "does not involve itself with the day-to-day business of Hope Village and keeps a distance from the 'halfway' house"). Thus, this claim against the United States must be dismissed for lack of jurisdiction.

2. **The court also lacks subject matter jurisdiction over Johnson's claim for negligent oversight**

Johnson's response in opposition also raises a claim of negligent oversight against the United States. Johnson argues that he "does NOT allege 'tort liability which might otherwise arise from the performance of duties which were reasonably delegated to the contractor,'" but instead "alleges a tortuous [sic] claim of negligence against the United States predicated upon a culture and climate of incompetence and indifference within the BOP to responsibly provide oversight of Hope Village." (Pl.'s Opp'n 5.) In particular, Johnson asserts that the "United States provides specious oversight of the BOP, which is known to provide shoddy oversight of Hope Village." (*Id.* at 9.)

In response, the United States argues that the court should not consider Johnson's claim because he raises it for the first time in his response. But, in keeping with "[p]rinciples requiring generous construction of pro se complaints," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), the court will consider the claim.

Even so, the court concludes that it lacks jurisdiction over Johnson's claim for negligent oversight. The FTCA excludes discretionary functions from its waiver of sovereign immunity.

5

*See* 28 U.S.C. § 2680(a). This discretionary function exception provides that the sovereign immunity waiver does not apply to:

> any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Id*. "To state a claim under the FTCA, a plaintiff has the burden of stating a claim for a state-law tort and establishing that the discretionary function exception does not apply." *Spotts v. United States*, 613 F.3d 559, 569 (5th Cir. 2010). If the exception does apply, the court "must dismiss the affected claims for lack of subject matter jurisdiction." *Indem. Ins. Co. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). As this court has explained, "[g]overnment contracts that delegate primary responsibility over services while leaving to itself an oversight role are examples of policy choices protected by the discretionary function exception." *Blankenship v. United States*, 210 F. Supp. 3d 857, 860 (W.D. Va. 2016). And, as was true in *Blankenship*, Johnson has failed to identify a federal statute, regulation, or policy that would place the BOP's supervision of Hope Village outside the scope of the discretionary function exception. *See id.* at 861.

Applying these principles, courts have dismissed claims similar to the negligent oversight claim at hand on the basis of the discretionary function exception. *See, e.g.*, *Lopez v. United States Immigration & Customs Enf't*, 455 F. App'x 427 (5th Cir. 2011) (dismissing FTCA action as barred by the discretionary function exception where plaintiff asserted the United States Marshals Service (USMS) committed negligence with respect to its failure to oversee medical care at contracted correctional center); *Ahern v. United States*, No. 2:14-cv-259, 2017 WL 2215633, at *10 (S.D. Tex. May 19, 2017) (dismissing FTCA action as barred by discretionary function exception where plaintiff asserted that individuals from USMS acted negligently with

6

respect to his medical care); *Johnson v. United States*, No. 4:05–cv-40, 2006 WL 572312, at *6 (E.D. Va. Mar. 7, 2006) (dismissing FTCA action as barred by discretionary function exception where plaintiff asserted that the USMS was negligent with respect to contracted jail's failure to provide medical care).

Johnson has not set forth any allegations to show that the BOP's "supervision" of Hope Village was not a discretionary function. Because Johnson has failed to meet his burden of establishing that the discretionary function exception does not apply, the court will dismiss his claim for negligent oversight for lack of subject matter jurisdiction.[1]

**C. Hope Village's Motion to Dismiss, or in the Alternative, for Summary Judgment**

Hope Village moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) or under Rule 12(b)(6) or, in the alternative, for summary judgment, on several grounds. First, it argues that Johnson failed to exhaust his administrative remedies. Second, it contends that his amended complaint fails to state a claim upon which relief may be granted. And third, it asserts that it is entitled to summary judgment because the undisputed facts establish that Johnson's negligence claim fails..

With regard to its failure-to-exhaust argument, Hope Village mistakenly relies on the exhaustion requirement set forth in the Prison Litigation Reform Act (PLRA). 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") But the text of that provision itself is clear that it does not apply to a former inmate who has been released and is not a prisoner at the time he files his complaint, and the Fourth Circuit has so held. *Cofield v.*

---

[1] Even if the court had jurisdiction, the claim would fail because Johnson has not shown that any failure to supervise proximately caused his injury. *See infra* at Section II.C (discussing lack of proximate causation as to the related claim against Hope Village).

7

*Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007); *see also Lesesne v. Doe*, 712 F.3d 584, 588 (D.C. Cir. 2013) (collecting authority and noting that every court of appeals to have addressed the issue has held that PLRA exhaustion is not required of a plaintiff who is not confined when his complaint is filed). Johnson filed his initial complaint in this matter on February 17, 2017, but he was released from Hope Village custody on May 3, 2016. Thus, the PLRA's exhaustion requirement does not apply to his claims in this case. Accordingly, the court will not dismiss the amended complaint based on any failure by Johnson to exhaust administrative remedies.

With regard to Hope Village's motion to dismiss under Rule 12(b)(6) and its alternate motion for summary judgment, the court turns first to the slip-and-fall claim. The court previously dismissed this claim due to a lack of supporting factual allegations. Johnson's amended complaint does nothing to remedy those deficiencies. Indeed, in his amended complaint, he does not even include the most cursory of allegations in his original complaint and may not even be asserting a slip-and-fall claim.[2] Regardless, the factual allegations are insufficient, and so that claim against Hope Village will be dismissed.

With regard to Johnson's claim that Hope Village was negligent due to a delay in scheduling his MRI, the court first notes that neither Hope Village nor Johnson have pointed the court to any cases addressing a similar type of negligence claim, *i.e.*, one based on a failure to timely order a diagnostic test in which the plaintiff seeks primarily financial damages (rather than damages for personal injuries). That is, Johnson is arguing that the BOP would have paid for the surgery had he still been at Hope Village, but once released, he was responsible for the cost of the surgery. Thus, his claim appears to be more in the vein of a negligence claim causing

---

[2] To the extent Johnson argues in his response to the motion to dismiss that he intended to include such a claim, that cannot save (or revive) his claim. He did not, and he cannot assert it through a response to a dispositive motion. In any event and applying liberal construction, even his response fails to allege sufficient facts for such a claim to survive a motion to dismiss.

8

only property damage. Similarly, neither party has cited to any cases regarding the standard of care in this situation or cited to any cases discussing whether the facts here would support a finding that the applicable standard of care was breached. The court is thus left without the benefit of any authority from the parties to guide its inquiry.

Nonetheless, under the District of Columbia law applicable here,[3] it is clear that

> [t]he plaintiff bears the burden of presenting evidence "which establishes the applicable standard of care, demonstrates that this standard has been violated, and develops a causal relationship between the violation and the harm complained of." In negligence actions the standard of care by which the defendant's conduct is measured is often stated as "that degree of care which a reasonable prudent person would have exercised under the same or similar circumstances."

*Pannu v. Jacobson*, 909 A.2d 178, 201 (D.C. 2006) (quoting *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979)). The court concludes that Johnson has failed to meet this burden.

Hope Village has challenged that Johnson has not presented evidence of delays caused by it and notes evidence showing that certain delays were beyond its control in the scheduling of his MRI, including delays—admitted by Johnson—in the medical provider's availability and equipment problems. In response, Johnson has failed to point to sufficient facts to support this negligence claim.

For example, he has not presented any facts to show the precise delay here. His amended complaint alleges a delay of "upwards of seven weeks," (Am. Compl. ¶ 8), but the evidence in the record suggests that the delay was, at most, one month. In support of its motion, Hope Village has offered an affidavit from the administrative director of Hope Village, Joseph Wilmer.

---

[3] As this court noted in its earlier opinion, "[s]ince this court's jurisdiction with respect to Hope Village is based upon diversity, the choice-of-law rules of the forum state, Virginia, must apply. *See ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983), *cert. denied*, 469 U.S. 1215 (1985)). Under Virginia's choice-of-law principles, tort claims are governed by the law of the state where the alleged harm occurred. *Vicente v. Obenauer*, 736 F. Supp. 679, 690 (E.D. Va. 1990); *see also Jones v. R. S. Jones & Assoc.*, 246 S.E.2d 33, 34 (Va. 1993). As stated above, Johnson slipped and fell at Hope Village, which is located in the District of Columbia. Thus, the court applies the District of Columbia's substantive law." (March 15 Mem. Op. 4, Dkt. No. 41.)

Mr. Wilmer explains that it is required by its contract with the BOP to seek BOP approval for residents to receive medical treatment in the community, absent a medical emergency. "Upon receipt of BOP approval, the resident is then scheduled for treatment with the medical provider at the first available date." (Wilmer Aff. ¶ 2, Dkt. No. 47-2.) To obtain that approval, Hope Village submits a specific form to the BOP. Attached to Wilmer's affidavit are documents he describes as true and correct copies of documents culled from Johnson's file. They reflect that Hope Village requested approval for Johnson's MRI on April 7, 2016, and that the request was approved by the BOP the following day. Johnson does not contest these dates, nor does he offer any facts to contradict that his MRI was scheduled at the first available date.

Johnson also has not identified the specific date that Dr. Morgan ordered the MRI or when Hope Village learned of it, other than to aver that it was at some point after she received and reviewed the March 8 x-ray. But construing the (somewhat vague) facts in his favor, based on his own affidavit, a jury could find that Hope Village knew the MRI had been ordered on or about March 8, and failed to take any steps to obtain an MRI until April 7. Thereafter, there is nothing in the record that could attribute any delay in the appointment to Hope Village. Johnson has not shown when Hope Village called to make the MRI appointment, which was originally scheduled for April 29, 2016. Likewise, Johnson has failed to present any evidence that there was an appointment available earlier such that any earlier call would have resulted in an earlier appointment. Thus, viewing all of the facts in the light most favorable to Johnson, the jury could find that Hope Village failed, for a period of—at most—about a month (March 8 to April 7) to request approval for his MRI.

Notably, however, Johnson has presented no information at all as to what type of delay might be typical in this circumstance (either at Hope Village or at any other similar facility), nor

has he submitted any other facts calling into question the reasonableness of that delay. Especially given that many medical appointments are scheduled months out from the date of a request, this absence of information is noteworthy.

Additionally, Johnson has not presented any information to show that any of the people responsible for the scheduling of the appointment were aware of any great urgency to the situation. In particular, while the financial consequences for Johnson may have been significant,[4] there is no indication in the records that this was an emergency surgery or that it was crucial that it be done immediately for health reasons. Indeed, the primary injury that he alleges caused his knee problems occurred in 2013, and he still has not had the surgery. So, it is hard to see how anyone at Hope Village would think there was a medical need for urgency.

In short, while what is "reasonable under all the circumstances" in a negligence case is typically a jury question, the court cannot find that the facts here could allow a reasonable jury to find that Hope Village acted negligently due to this brief delay.

Furthermore, Johnson has alleged that the harm he suffered was not having his surgery before his release. (Am. Compl. ¶ 11 (alleging that had the scheduling of the MRI not been delayed, his knee "surgery would have been ordered within days of the MRI.").) This allegation, however, is not supported by any facts and based purely on Johnson's own speculation. Thus, he has failed to put forth evidence that Hope Village's alleged negligence was the proximate cause of his injury, *i.e.*, his failure to obtain the surgery before his release. His claim also fails for this reason—a complete lack of facts to establish causation.

---

[4] On the other hand, as Hope Village notes, Johnson may have been eligible upon his release for Medicaid, and he also was advised during his February 10, 2016 visit to Unity that he would be eligible for insurance upon release from the half-way house if further treatment was necessary. (Hope Village Supp. Mem. 14, Dkt. No. 47.)

Accordingly, the court will grant the summary judgment motion as to the claim that Hope Village was negligent based on some delay in scheduling Johnson's MRI.

III. CONCLUSION

For the reasons stated above, the court will grant the United States' motion to dismiss, grant Hope Village's motion to dismiss the slip-and-fall claim, and grant Hope Village's motion for summary judgment on the second negligence claim. An appropriate order will follow.

Entered: August 30, 2018.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge